# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MONTEASIEA M. JOHNSON | § | |
| | § | |
| v. | § | CASE NO. 4:15-CV-198 |
| | § | Judge Mazzant |
| MAYHILL BEHAVIORAL HEALTH, LLC | § | |
| D/B/A MAYHILL HOSPITAL | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #26). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

### BACKGROUND

Plaintiff Monteasiea M. Johnson ("Plaintiff") is an African American female (Dkt. #27 at p. 1). Plaintiff began her employment with Universal Behavior Health of Denton ("UBH") as a mental health technician in April 2006 (Dkt. #27 at pp. 1-2). During her employment with UBH, Plaintiff reported to Chief Nursing Officer, Vicki Stoker ("Stoker") (Dkt. #27 at p. 2).

In June 2013, while Plaintiff was working for UBH, she learned about an available position as Staffing Coordinator at Mayhill Behavioral Health, LLC d/b/a Mayhill Hospital ("Mayhill" or "Defendant") from Cameshia Darrough ("Darrough"), who was Staffing Coordinator at UBH (Dkt. #27 at p. 2). Darrough informed Plaintiff that she believed the Staffing Coordinator position at Mayhill was Plaintiff's if she wanted it, because Stoker had told Darrough that she wanted to hire Johnson for the position (Dkt. #27 at p. 2).

Also in June 2013, Plaintiff was hired as Staffing Coordinator by Mayhill (Dkt. #26 at ¶ 2). Mayhill is a private psychiatric hospital providing mental health and chemical care for adults and senior citizens (Dkt. #26 at ¶ 1). Mayhill maintains an Equal Employment Opportunity Policy that prohibits discrimination based on race and other legally protected criteria and also

1

prohibits retaliation (Dkt. #26 at ¶ 1). Stoker, the Interim Chief Nursing Officer, hired Plaintiff for the Staffing Coordinator position (Dkt. #26 at ¶ 2). At the time Plaintiff was hired at Mayhill, Stoker was both the Interim Chief Nursing Officer at Mayhill and the Chief Nursing Officer of UBH (Dkt. #26 at ¶ 2). Mayhill and UBH are separate but affiliated entities (Dkt. #26 at ¶ 2).

During Plaintiff's employment at Mayhill, Linda Hayes ("Hayes") was the Chief Executive Officer and Anna Griffith ("Griffith") was the Interim Director of Nursing (Dkt. #26 at ¶ 2). Patricia Gloria-Barraza ("Gloria-Barraza") was the Human Resources Coordinator at that time (Dkt. #26 at ¶ 2). As Staffing Coordinator, Plaintiff reported to Griffith and Stoker (Dkt. #26 at ¶ 3). Her duties included, among other things, setting schedules to ensure that Mayhill had adequate staff, administering testing for new hires, and ordering supplies (Dkt. #26 at ¶ 3). In addition, she would receive payroll adjustment forms (also known as "mispunch cards") from the employees in the nursing department who had to work through meal periods or who required other payroll adjustments and pass them along to the appropriate Mayhill manager, usually Griffith or Stoker, for signature (Dkt. #26 at ¶ 3).

Plaintiff's work schedule at Mayhill was initially 9:00 a.m. to 6:00 p.m. (with a 30-minute lunch period) but it was changed from 8:00 a.m. to 5:00 p.m. (still with a 30-minute lunch period) shortly after she started (Dkt. #26 at ¶ 4). Plaintiff has acknowledged that she understood that Mayhill required her to clock out for lunch and that her lunch period was a half-hour (Dkt. #26 at ¶ 4). The parties disagree about whether or not Plaintiff was required to get permission in order to work through lunch. *See* Dkt. #26 at ¶ 4 (explaining that she must have known that she was required to ask permission since she collected mispunch forms from employees and passed them along for signature to Mayhill managers); *but see* Dkt. #27 at pp. 9-

10 (arguing that there is a fact issue as to whether Plaintiff was an exempt employee who was not required to take lunch breaks or whether she was an non-exempt employee who was required to take lunch breaks). However, Plaintiff does not dispute that she failed to clock out for lunch on July 2, July 8, July 9, and July 10, 2013 (Dkt. #26 at ¶ 9). She also concedes that she never completed a mispunch card for any of the days in question (Dkt. #26 at ¶ 9).

Plaintiff maintains that, "towards the end of June 2013, Vicki Stoker met with [Plaintiff] and gave her a stack of resumes of applicants seeking positions with Mayhill and Stoker told [Plaintiff] to review them and determine which applicants were qualified for the positions." (Dkt. #27 at p. 10). According to Plaintiff, "Stoker further instructed [Plaintiff] to contact and set up as many interviews as possible for the applicants that were qualified, because Mayhill was way understaffed." (Dk. #27 at p. 10). Plaintiff states that Stoker told her that it was urgent and that Plaintiff needed to do whatever she had to do to get through the applications and get people hired (Dkt. #27 at p. 10). Plaintiff maintains that "Stoker gave [Plaintiff] this task right around lunch time and [Plaintiff] asked Stoker about taking lunch before starting the project and Stoker told [Plaintiff] to work through lunch if necessary, and that she needed it done ASAP." (Dkt. #27 at pp. 10-11).

Although the parties disagree about how long Plaintiff spent completing this task, Plaintiff maintains that she had to work through lunch to complete the task in addition to her other work duties for several days (Dkt. #27 at p. 11). Plaintiff asserts that "[she] believed she had been given permission by Stoker to work through lunch if necessary, because Stoker told [Plaintiff] to do whatever is necessary to complete the task even, if it means working through lunch." (Dkt. #27 at p. 11). Plaintiff further maintains that she was giving Stoker updates on the

assigned task and that Stoker was aware that she was working through lunch to complete the task as soon as possible (Dkt. #27 at p. 11).

On July 11, 2013, Plaintiff claims that she told Gloria-Barraza about two alleged discriminatory remarks: (1) an alleged remark by Griffith, then Interim Director of Nursing, that she did not plan to hire an applicant whom Griffith had allegedly described as "ghetto and pregnant" and (2) an alleged remark by Stoker, then Chief Nursing Officer, that she did not plan to hire an applicant because of his age (Dkt. #26 at ¶ 12). When Plaintiff spoke to Gloria-Barraza about the discriminatory remarks, Gloria-Barraza told her to speak to Hayes, the Chief Executive Officer (Dkt. #26 at ¶ 13).

Plaintiff alleges that after speaking to Gloria-Barraza, she telephoned Hayes twice but did not leave a message (Dkt. #26 at ¶ 14). She also alleges that she prepared a letter and approached Hayes in the hallway and told her that she "had a letter and a situation she needed to talk to her about," but she did not describe the nature of the situation or mention the words "race" or "discrimination" (Dkt. #26 at ¶ 14). Plaintiff claims that Hayes walked away, and that she was terminated before she could take the matter to anyone else (Dkt. #26 at ¶ 14).

On July 19, 2013, Griffith informed Gloria-Barraza that Plaintiff had failed to take the required 30-minute lunch period on July 2, July 8, July 9, and July 10, 2013 and had clocked in early from lunch on July 3, 2013 (Dkt. #26 at ¶ 7).[1] Griffith also stated that she had already spoken to Hayes about the matter and that a decision had been made to terminate Plaintiff's employment for violating Mayhill's policies regarding timekeeping and clocking out for meal breaks (Dkt. #26 at ¶ 7). Later on July 19, 2013, Griffith and Gloria-Barraza met with Plaintiff,

---

[1] Plaintiff maintains that while "[she] may have clocked in early on July 3, 2013, . . . she is unsure because the employee time clock down stairs and the employee time clock upstairs were not synched and showed different times[.]" (Dkt. #27 at p. 12). Therefore, Plaintiff argues that "[she] probably clocked out for lunch upstairs and clocked in from lunch downstairs as she usually did when taking lunch." (Dkt. #27 at p. 12). The parties disagree about whether or not Griffith was aware of the disparity between the time clocks.

4

presented her with the termination form, and notified her that Mayhill was discharging her for failing to take a lunch period on July 2, July 8, July 9, or July 10, 2013 and for clocking in early from lunch on July 3, 2013 (Dkt. #26 at ¶ 8). During the termination meeting, Plaintiff did not state that Stoker or anyone else had given her a project that she believed required her to work through lunch, nor did she mention any alleged problems with the clocks at Mayhill (Dkt. #26 at ¶ 10).

On May 4, 2016, Defendant filed its Motion for Summary Judgment (Dkt. #26). On May 23, 2016, Plaintiff filed her response (Dkt. #27). On June 3, 2016, Defendant filed its reply.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the

essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

*Evidentiary Objections*

As an initial matter, both parties make several evidentiary objections, most of which the Court addresses in its Memorandum Opinion and Order regarding Defendant's Objection to and Motion to Strike Plaintiff's Summary Judgment Affidavit and All Assertions in her Response Based on That Affidavit (the "Motion to Strike") (Dkt. #31). However, the Court finds that it is necessary to address the objections that were not included in the Motion to Strike.

Defendant object to Plaintiff's testimony that she overheard Griffith say that the upstairs and downstairs clocks were out of synch because this is inadmissible hearsay (Dkt. #26 at pp. 11-12). However, the Court finds that this is an admission of a party opponent and non-hearsay. *See* FED. R. EVID. 801(d)(2). For purposes of the hearsay rule, an employee's statements are admissible against his or her employer as long as the statements were made during the existence of the employment relationship, and concerning subject matter within the scope of employment. *See* FED. R. EVID. 801(e)(2)(D). Therefore, this part of Plaintiff's deposition should not be stricken.[2]

Plaintiff argues that "[a]ny disciplinary actions issued to Johnson during her employment with UBH should not [be] considered by this Court in ruling on Defendant's Motion for Summary Judgment because UBH was not Johnson's employer and therefore they are not relevant to this suit." (Dkt. #27 at p. 13). However, as Plaintiff concedes, "[Plaintiff] was also told by Gloria-Barranza and the termination paperwork states that she was also terminated as a result of previous disciplinary actions issued to her for excessive tardiness and attendance policy violations." (Dkt. #27 at p. 12). Plaintiff goes on to state that "[a]ll of these alleged attendance policy violations and excessive tardiness occurred while Johnson was employed with UBH, which is a separate and distinct entity from Mayhill." (Dkt. #27 at p. 12). Specifically, Plaintiff objects to four separate pieces of evidence because they concern disciplinary action that "was issued to [Plaintiff] when she worked at UBH which is not a party to this suit and is not relevant because as the Defendant has conceded, Mayhill was [Plaintiff's] sole employer." (Dkt. #27 at p. 15). Plaintiff further states that this evidence is not relevant because "Mayhill hired [Plaintiff]

---

[2] However, within the Court's Order on the Motion to Strike, the Court struck the part of Plaintiff's affidavit that stated that Griffith directly told her that the clocks were not synched due to the inconsistency of this statement with Plaintiff's previous deposition testimony.

7

with knowledge of the previous disciplinary action issued to [Plaintiff] at UBH." (Dkt. #27 at p. 15).

However, the Court finds that this information is clearly relevant. The purported reason for Plaintiff's termination is highly relevant to an analysis of pretext. Likewise, although UBH and Mayhill are separate entities, the parties have agreed that they are related. *See* Dkt. #27 at p. 3 (stating that UBH and Mayhill are subsidiaries of the same parent company). Furthermore, there appears to be an overlap of personnel and leadership between the two entities. *See* Dkt. #26 at ¶ 2 ("At the time Plaintiff was hired at Mayhill, Stoker was both the Interim Chief Nursing Officer at Mayhill and the Chief Nursing Officer of UBH."). Therefore, the Court finds that Plaintiff's objections to evidence concerning her previous discipline at UBH are overruled for the purposes of addressing Defendant's Motion for Summary Judgment.[3]

Plaintiff also objects to paragraph 6 of Gloria-Barazza's declaration "because it is hearsay and no exception applies." (Dkt. #27 at p. 15). However, the Court agrees with Defendant that this paragraph, which describes Gloria-Barraza's conversation with Griffith regarding the termination decision, falls within the state of mind exception (Dkt. #28 at p. 4). The statements were "not offered for the truth of the matter asserted, but instead, to show why Mayhill discharged Plaintiff." (Dkt. #28 at p. 4). Therefore, the Court finds that paragraph 6 of Gloria-Barazza's declaration is admissible.[4] Having addressed the parties' evidentiary objections, the Court now addresses the merits of Defendant's Motion for Summary Judgment.

---

[3] However, the issue of the relevancy of Plaintiff's previous discipline at UBH can be raised again by Plaintiff in a Motion in Limine.

[4] Plaintiff argues that she "objects to all the facts listed in Defendant's Statement of Undisputed Facts, except those that do not contradict the facts raised in the Plaintiff's Factual Summary and Analysis[.]" (Dkt. #27 at p. 2). Therefore, to the extent that the Court finds Defendant's statement of undisputed facts contradict Plaintiff's statement of the facts, the Court regards the facts as disputed.

*Plaintiff's Title VII Racial Discrimination Claim*

After a careful review of the record and the arguments presented, the Court is not convinced that Defendant has met its burden demonstrating that there is no material issue of fact entitling it to judgment as a matter of law on the issue of Plaintiff's racial discrimination claim under Title VII. The issue should proceed to trial.

*Plaintiff's Retaliation Claims*

After a careful review of the record and the arguments presented, the Court is not convinced that Defendant has met its burden demonstrating that there is no material issue of fact entitling it to judgment as a matter of law on the issue of retaliation for Plaintiff's reporting age discrimination. The issue should proceed to trial.[5]

Furthermore, after a careful review of the record and the arguments presented, the Court is not convinced that Defendant has met its burden demonstrating that there is no material issue of fact entitling it to judgment as a matter of law on the issue of retaliation for Plaintiff's reporting racial discrimination. The issue should proceed to trial.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #26) is hereby **DENIED.**

---

[5] Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice made unlawful by Title VII. *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 839 (5th Cir. 2010) (citing 42 U.S.C. § 2000e–3(a)). Under *McDonnell Douglas*, a plaintiff first must establish a *prima facie* case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). This requires evidence that: (1) the plaintiff engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. *See, e.g., Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009); *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). However, "Title VII protects only opposition to discrimination based on race, color, religion, sex, or national origin." *Brown*, 406 F. at 840 (citation omitted). Therefore, since Plaintiff's reporting of alleged age discrimination is not protected activity under Title VII, it was not rendered unlawful by Title VII.

However, since Plaintiff alleges retaliation based on her reporting age discrimination, although she does not specifically mention the Age Discrimination in Employment Act ("ADEA"), the Court will allow this claim to proceed.

**SIGNED this 9th day of August, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE